JOURNAL ENTRY and OPINION.
{¶ 1} Plaintiff-appellant the State of Ohio appeals from the trial court's decision to deny the state's motion that sought vacation of the trial court's earlier order. The earlier order had the effect of "judicially-releasing" defendant-appellee Jacqueline Clark from her original sentence of three years' incarceration, which the trial court had imposed after a jury convicted appellee of involuntary manslaughter and child endangering.
 {¶ 2} The state argues the trial court lacked jurisdiction pursuant to either statute or criminal rule to issue an order that attempted subsequently to modify appellee's valid sentence. This court agrees. Consequently, the trial court's order is vacated, and this case is remanded for further proceedings consistent with this opinion.
 {¶ 3} The record reflects appellee was a foster-care provider licensed by Cuyahoga County Department of Children and Family Services ("the agency"). Into appellee's care, the agency placed a two-year old boy. Appellee thereafter permitted her 15-year-old granddaughter to baby-sit the boy while appellee went out on an errand. When appellee returned from her errand, she found the boy injured and unconscious, but waited approximately twelve hours before she obtained medical care for him. The boy subsequently died of his injuries, which were consistent with "shaken-baby syndrome."
 {¶ 4} As a result of this incident, appellee was indicted on two counts, viz., involuntary manslaughter and child endangering.[1] The jury ultimately convicted appellee of both offenses.
 {¶ 5} Appellee's original sentencing hearing took place on March 18, 2002, following the preparation of a presentence report by the probation department. The trial court first listened to the comments of the prosecutor, the victim's parents, defense counsel, appellee's minister, and appellee herself. Then, on the record, the trial court considered the facts of the case in conjunction with the applicable statutory factors.
 {¶ 6} In pronouncing sentence upon appellee, the trial court noted the maximum penalty for involuntary manslaughter was 15 years, but stated such "a lengthy period of incarceration" was not "appropriate." Nevertheless, the trial court deemed "any kind of probation or house arrest would be inappropriate and would demean the seriousness of this offense." Therefore, the trial court imposed upon appellee for her conviction for involuntary manslaughter a minimum term of incarceration of three years. The trial court ordered that term to be served concurrently with a one year term for the child endangering conviction.
 {¶ 7} The trial court informed appellee of her right to appeal her convictions and sentence. The trial court further indicated it had "certain options in terms of judicial release" which it would consider at a later time.
 {¶ 8} The record reflects that appellee filed no direct appeal. Instead, on June 10, 2002, 84 days after the sentencing, her trial counsel filed on her behalf a "motion for reconsideration" of the sentence imposed. Counsel cited no precedent for the request; he simply argued that appellee's age and physical condition limited her ability to cope with the prison environment.
 {¶ 9} The record reflects the trial court set a date for hearing on appellee's motion. The hearing took place as scheduled; however, the prosecutor's office sent no representative. On the record, the trial court noted it had some suspicion that service of appellee's motion on the prosecutor's office had been unsuccessful; nevertheless, the hearing proceeded.
 {¶ 10} In its introductory remarks, the trial court stated that in appellee's case, it had been the court's "desire and * * * intent to sentence her to the state penal institution for a brief period of time." Since appellee's offense had been one that "require[d] no judicial release for six months," the trial court at the time of sentencing had "suggested to [defense counsel] that he file a motion for modification of sentence."
 {¶ 11} The trial court thereafter listened to remarks from defense counsel and appellee before stating "further incarceration" was unnecessary. In appellee's case, "The Court was very concerned * * * that the seriousness of this offense be recognized * * *." The court continued, "We made a statement. I think a further statement is * * * unnecessary. I'm going to release [appellee] at this point. I'm going to modify her sentence."
 {¶ 12} The trial court ordered appellee released and placed her on three years conditional "probation." A journal entry to that effect was filed on June 24, 2002.
 {¶ 13} Several months later, the prosecutor's office became aware of the trial court's action. On September 30, 2002, the prosecutor filed a motion to vacate the June journal entry.
 {¶ 14} The record reflects the trial court conducted a hearing on the motion on November 19, 2002.[2] The trial court first listened to the prosecutor's argument that it had lacked jurisdiction to issue the order of "modification," then permitted one of the victim's parents to speak, since "one of the objections" raised by the state was that the parents "weren't notified of the [sentence reconsideration] hearing."
 {¶ 15} At that point, contrary to its previous acknowledgment, the trial court stated that it had been "under the mistaken impression" at the time of appellee's sentencing "that I could judicially release her * * * after approximately ninety days." The trial court continued by stating that if it had "been aware" it could not release appellee "until six months had elapsed, [it] would have granted her probation (sic) and sentenced her to the county jail for a period of time * * *." The trial court concluded its remarks by stating its "error ha[d] unnecessarily prejudiced" appellee, and that, consequently, it had "fashioned a resolution" and would "declare it a clerical error."
 {¶ 16} Subsequently, the trial court issued its decision. The decision found "additional incarceration" of appellee was "inconsistent with the purpose of R.C. 2929.11." The decision suspended the remaining prison term, placed appellee on a three-year period of conditional community control, and, finally, denied as "moot" the state's motion to vacate the order of appellee's new sentence.
 {¶ 17} The state's appeal of the trial court's decision presents the following assignment of error for review:
 {¶ 18} "I. The trial court erred as a matter of law when it arbitrarily and without jurisdiction, (sic) granted judicial release and later denied the state's motion to vacate entry dated [June] 24, 2002."
 {¶ 19} The state argues the trial court lacked jurisdiction to either reconsider or modify its original order of sentence in this case. This court agrees.
 {¶ 20} It long has been recognized that once the trial court has ordered into execution a valid sentence, it may no longer either amend or modify that sentence except under very limited circumstances. State v.Garretson (2000), 140 Ohio App.3d 554, 558, citing, inter alia, State v.Addison (1987), 40 Ohio App.3d 7. In one circumstance, a trial court retains jurisdiction to correct "void" sentencing orders, which are defined as those made in an attempt "to disregard statutory requirements." State v. Beasley (1984), 14 Ohio St.3d 74, 75. In another, a trial court may correct clerical errors, which are mistakes of transcription or omission that exist in an order.[3] Crim.R. 36; Statev. Garretson, supra at 559; State v. Brown (2000), 136 Ohio App.3d 816,819-820. Neither of these narrow exceptions appears in this case.
 {¶ 21} Additionally, R.C. 2929.20 bestows limited jurisdiction upon the trial court to modify a sentence; however, appellee had been convicted of first and third degree felony offenses. Therefore, the statute permitted no judicial release until appellee had served six months of incarceration. R.C. 2929.20(B)(2). The trial court's comments during the hearing on appellee's "motion for reconsideration" reflected its recognition that appellee's imprisonment for only 84 days made judicial release unavailable in this case.
 {¶ 22} "Subject matter jurisdiction focuses on the court as a forum and on the case as one of a class of cases," not on the merits of the case's facts themselves. State v. Garretson, supra at 558. As the trial court explained to appellee at the original sentencing hearing, the proper forum for any challenge of her sentence lay in this court, rather than in a "motion for reconsideration" directed to the trial court. R.C.2953.02; R.C. 2953.08(A); cf., e.g., Pitts v. Ohio Dept. of Trans.
(1981), 67 Ohio St.2d 378. Otherwise, the defendant would have no assurance that the punishment had finality. Brook Park v. Necak (1986),30 Ohio App.3d 118.
 {¶ 23} A review of the record in this case demonstrates the trial court's original order of sentence was valid and final; consequently, the trial court lacked jurisdiction to grant appellee's "motion for reconsideration."
 {¶ 24} The state's assignment of error, accordingly, is sustained.
 {¶ 25} The trial court's orders that modify appellee's sentence and deny the state's "motion to vacate" the modified sentence both are vacated. This case is remanded for further proceedings consistent with this opinion.
FRANK D. CELEBREZZE, JR., J. and SEAN C. GALLAGHER, J. concur.
[1] Pursuant to R.C. 2903.04(C) and R.C. 2919.22(E)(5)(c), the crimes are felonies of, respectively, the first degree and the third degree.
[2] No journal entry notifying the parties of the date of the hearing appears on the case docket.
[3] The trial court made no mention of Crim.R. 36 in any of the journal entries issued subsequent to its original order of sentence; consequently, it is unnecessary to address in detail the state's argument that the trial court improperly relied upon that rule to justify its decision to modify.